NOT FOR PUBLICATION                                                                        (Doc. No. 41)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____
                                                          :
RAMON GABER, CITIZENS FINANCIAL  :
MORTGAGE, INC., ATLANTIC               :
APPRAISAL AND TITLE, LLC, and         :
ATLANTIC APPRAISAL ASSOCIATES, :
INC.,                                                        :
                                                          :
                    Plaintiffs,                      :     Civil No. 08-4926 (RBK/AMD)
                                                          :
           v.                                          :     **OPINION**
                                                          :
MORTGAGE ASSET RESEARCH       :
INSTITUTE, INC.,                                :
                                                          :
                    Defendant.                    :
_____:

**KUGLER**, United States District Judge:

      This matter comes before the Court on a motion by Defendant Mortgage Asset Research Institute, Inc. ("Defendant" or "MARI") for judgment on the pleadings. In their Complaint, Plaintiffs Ramon Gaber, Citizens Financial Mortgage, Inc., Atlantic Appraisal and Title, LLC, and Atlantic Appraisal Associates, Inc. (collectively, "Plaintiffs") seek relief for reputational injury and subsequent losses under a theory that Defendant engaged in negligent business practices. Defendant argues that because Plaintiffs' injury was caused by publication of a false statement to third parties and because Plaintiffs are precluded from bringing a negligence action to seek redress for an injury sounding in defamation, Plaintiffs have failed to state a claim upon which relief can be granted. Because the Court finds that Plaintiffs have not stated a viable claim for negligence, the Court grants Defendant's motion.

I.      BACKGROUND

Because this matter comes before the Court on a motion for judgment on the pleadings, the Court accepts as true the following factual allegations from Plaintiffs' Complaint.

Plaintiff Ramon Gaber ("Gaber") is a registered real estate appraiser. Defendant is in the business of preventing mortgage fraud by identifying individuals whose professional actions suggest improper or fraudulent practices. It does this by publishing and disseminating reports to mortgage lenders concerning the backgrounds of professionals involved in the mortgage industry. For example, MARI publishes reports regarding the backgrounds of real estate appraisers. Recipients use these reports to evaluate whether a professional is fit to be employed to perform services in connection with the origination and processing of residential mortgage loans. Defendant's reports are only available to subscribers, and all reports are confidential.

The series of events that give rise to this suit began with a pair of appraisals of a property in Wrightstown, Pennsylvania ("the Property"). First, on November 9, 1998, an appraiser named Paul Kallus signed an appraisal of the Property ("the Kallus Appraisal"). The Kallus Appraisal contained a number of mistakes.[1] A few weeks later, on December 3, 1998, Gaber signed a different appraisal of the Property ("the Gaber Appraisal"). The Gaber Appraisal did not contain any mistakes. At the time of the Gaber Appraisal, Gaber was a principal of Plaintiff Atlantic Appraisal and Title, LLC ("Atlantic Title"), and Plaintiff Atlantic Appraisal Associates, Inc. ("Atlantic Associates"). These companies provided appraisals of properties to mortgage banks and mortgage lenders in connection with the financing of home loans.

Around 2001, Atlantic Associates and Atlantic Title began losing business because numerous lenders refused to accept the companies' appraisals. After multiple inquiries, Gaber

---

[1] For example, the report significantly misstated the acreage and market value of the Property.

2

eventually learned that he was the subject of a negative appraisal report ("the MARI Report"). Gaber repeatedly inquired about the MARI Report so that he could dispute any errors it contained, but he was told the report was confidential and that no one could provide him with any information about what was contained in the report or who issued it. By 2005, Atlantic Associates was no longer a profitable business, and by 2006 it was forced to close.

In 2005, Gaber became a principal of Plaintiff Citizens Financial Mortgage, Inc. ("Citizens"), which is a real estate mortgage broker company. Soon after Gaber became affiliated with Citizens, lenders began to reject Citizens as a broker because of Gaber's affiliation with the company. Around August 17, 2006, Gaber obtained a copy of the MARI Report from a MARI subscriber that was willing to breach its confidentiality agreement with Defendant. The report, first published by MARI in 2001, stated that the Gaber Appraisal contained a number of errors. However, as noted above, the Gaber Appraisal did not contain any mistakes. Instead, the MARI Report incorrectly attributed the mistakes of the Kallus Appraisal to the Gaber Appraisal.

After filing a claim for defamation in the Court of Common Pleas of Philadelphia County in October of 2007 and voluntarily dismissing that claim in May of 2008, Plaintiffs filed a claim for negligence in the Superior Court of New Jersey, Burlington County, Civil Division in August of 2008. That action was removed to this Court on October 3, 2008, and on February 3, 2010, Defendant filed the present motion for judgment on the pleadings. With Defendant's brief in support of its motion, Plaintiffs' response in opposition, and Defendant's reply presently before the Court, Defendant's motion is now ripe for disposition.

**II. STANDARD**

Under Federal Rule of Civil Procedure 12(c) a party may move for judgment on the pleadings. The movant under Rule 12(c) must clearly show that no material issue of fact exists and that it is entitled to judgment as a matter of law. Rosenau v. Uniford Corp., 539 F.3d 218, 221 (3d Cir. 2008) (citing Jablonski v. Pan Am. World Airways, Inc., 863 F.2d 289, 290-91 (3d Cir. 1988)). In reviewing a Rule 12(c) motion, the court must view the facts in the pleadings and the inferences therefrom in a light most favorable to the nonmovant. Id. "A motion for judgment on the pleadings, like a motion to dismiss, will be granted if the plaintiff has not articulated enough facts to 'raise a right to relief above the speculative level.'" Bangura v. City of Phila., No. 08-2742, 2009 WL 2252877, at *3 (3d Cir. July 29, 2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007)).

**III. DISCUSSION**

Defendant argues that Plaintiffs have incorrectly pled a claim for defamation as one for negligence and that Plaintiffs' negligence claim should therefore be dismissed for failure to state a claim upon which relief can be granted. Plaintiffs claim that Defendant owed them a duty not to make false reports concerning Gaber and that Defendant's breach of this duty gives rise to a claim of negligence. Instead of arguing that Defendant was negligent because the information contained in the MARI Report was inaccurate, Plaintiffs argue that Defendant was negligent because (1) it did not take adequate steps to ensure the accuracy of its information, (2) it did not provide Gaber with an adequate channel through which to challenge the contents of the MARI Report, and (3) Defendant's "entire business model . . . is inherently reckless." Pl. br. at 12.

Two issues underlie this dispute. First is the issue of whether New Jersey or Pennsylvania law applies to this case. Second is the issue of whether Plaintiffs can properly

bring a negligence action or whether they are relegated to seeking relief under a theory of defamation. To the extent that Plaintiffs seek to recover for the communication of the MARI Report, Plaintiffs' claim is barred because it is actually a claim for defamation and both New Jersey and Pennsylvania prevent a plaintiff from bringing a defamation claim as a negligence claim. To the extent that Plaintiffs' negligence claim is not an attempt to sue upon the actual communication of the MARI Report but is instead an attempt to sue upon Defendant's underlying practices of gathering and verifying information, the issue before the Court becomes whether Plaintiffs can claim that Defendant had a duty, separate and apart from the duties normally owed under the law of defamation, to carefully gather and verify information. To this extent, Plaintiffs' negligence claim is barred (1) because New Jersey law treats a claim for the negligence underlying a defamatory statement as an inseparable part of a defamation claim, properly analyzed under the standards of defamation and (2) because Pennsylvania law does not appear to recognize a duty in the context of defamatory publication, independent of the duties imposed by the law of defamation, to carefully gather information. For these reasons, the Court grants Defendant's motion.

Both New Jersey and Pennsylvania recognize that where a plaintiff claims that the communication of false information has injured his reputation, the plaintiff is precluded from seeking redress under a theory of negligence. Instead, the proper cause of action is defamation. Morgenstern v. Fox Television Stations of Phila., No. 08-0562, 2008 WL 4792503, at *12 (E.D. Pa. Oct. 31, 2008); Container Mfg. Inc. v. CIBA-GEIGY Corp., 870 F. Supp. 1225, 1236 (D.N.J. 1996); Gregory v. Hasara, No. 90-2289, 1991 WL 53671, at *7 (E.D. Pa. Apr. 3, 1991); Dairy Stores, Inc. v. Sentinel Publ'g Co., 465 A.2d 953, 960-61 (N.J. Super. Ct. Law Div. 1983), aff'd, 486 A.2d 344 (N.J. 1986); cf. Phila. Cervical Collar v. Jerome Group, Inc., No. 00-2515, 2002

WL 126632, at *7 (E.D. Pa. Jan. 30, 2002) (holding that a product disparagement action precludes a related action for negligence).

This preclusive effect is strong in New Jersey, where plaintiffs are barred not only from suing in negligence for harm caused by the communication of defamatory statements, but also from suing in negligence for any acts that proximately underlie the communication of defamatory statements. Container Mfg., 870 F. Supp. at 1236; Dairy Stores, 465 A.2d at 960-61. The primary rationale for this preclusive effect is that when a plaintiff harmed by defamatory speech attempts to sue in negligence for underlying negligent acts, such a claim for negligence is simply an intolerable attempt to circumvent the heightened standards of defamation law. Container Mfg., 870 F. Supp. at 1236; Dairy Stores, 465 A.2d at 960-61.

In Dairy Stores, a newspaper published an article suggesting that a seller of bottled water had falsely labeled tap water as spring water. 465 A.2d at 955. The article was based on tests performed by a laboratory that analyzed the water and concluded that it was not stream water. Id. Although the plaintiff sued the newspaper and the article's author for defamation, it sued the laboratory for negligence, suggesting that it owed the plaintiff a duty to carefully test the water and report the results of the test. Id. at 960. However, the Superior Court of New Jersey ruled that although a duty may have existed, the laboratory's only relevant duty was to refrain from "communicat[ing] false information about another party," and that "[t]he parameters of that duty and the circumstances under which an action may be maintained for its breach are the subject of the laws of defamation." Dairy Stores, 465 A.2d at 960-61. Because the plaintiff's alleged injury ultimately arose from the defendant's communication of false information, the court converted the purported negligence claim into a claim for defamation. Id. at 960-61; see Container Mfg., 870 F. Supp. at 1236 (holding, under similar facts involving the preparation and

6

publication of an inaccurate product safety report, that although the plaintiff could maintain a defamation action, it could not "maintain an action under the less stringent negligence standard . . . because it is crafted as a claim for the underlying negligence that led to the publication").

This same preclusive effect appears to exist in Pennsylvania. Like New Jersey, Pennsylvania precludes plaintiffs from suing in negligence for harm caused by the communication of defamatory statements. See Morgenstern, 2008 WL 4792503, at *12; Gregory, 1991 WL 53671, at *7. Further, to the extent that a plaintiff seeks to sue in negligence for conduct separate and apart from the actual communication of a defamatory statement – for example, by suing upon the underlying conduct that precedes or leads up to a defamatory statement – such claims fail when the law does not recognize a duty of care. Morgenstern, 2008 WL 4792503, at *12. In respect to the present matter, the Court is unaware of a duty recognized by Pennsylvania law to carefully gather information that eventually forms the basis of a defamatory statement. See id.

In Morgenstern, a plaintiff sued multiple defendants in relation to media coverage suggesting that the plaintiff had engaged in an inappropriate relationship with a minor. 2008 WL 4792503, at *12. In addition to filing actions for defamation, the plaintiff alleged that members of the media were negligent in their reporting and that an individual was negligent in making statements to the media regarding the plaintiff's alleged inappropriate relationship. Id. The U.S. District Court for the Eastern District of Pennsylvania, reasoning that it was unaware of any duty owed to the plaintiff in the context of defamatory publication or of any legal authority to support the plaintiff's attempt to "overcome the hurdles created by the defamation standard," dismissed the claim of negligence. Id.

7

In the present matter, Plaintiffs' negligence claim cannot stand in light of these cases. To the extent that Plaintiffs' claim centers on the harm brought upon Plaintiffs by the actual communication of the MARI Report, the claim is precluded because it falls within the exclusive province of defamation. And although Plaintiffs argue that their claim is focused on reckless business practices instead of the communication of the report, the Court struggles to ignore the reality that the claim seems to fit squarely within the contours of defamation. Plaintiffs freely admit in their Complaint that they have suffered reputational injury and that they have suffered "as a result of the publication and dissemination of the MARI report." Compl. at ¶ 41. Indeed, without the publication and dissemination of the report, Plaintiffs would suffer no injury at all, regardless of how recklessly Defendant acted in obtaining and verifying its information. Thus, the very crux of Plaintiffs' claim is that they were harmed by the communication of the report, not by its mere existence or by the manner in which Defendant obtained or verified it.

Moreover, both New Jersey and Pennsylvania law appear to preclude Plaintiffs' negligence claim to the extent that it is an attempt to sue upon Defendant's practices of gathering and verifying information. In New Jersey, this duty is simply part and parcel of the duty imposed by defamation law not to communicate a defamatory statement. Thus, just as the underlying negligence of the defendants in Container Manufacturing and Dairy Stores did not give rise to a negligence claim, MARI's underlying negligence in verifying its appraisal reports does not give rise to a negligence claim. Here, the Court must preclude Plaintiffs from circumventing the heightened standards of defamation by seeking relief under a theory of negligence.

In regard to Pennsylvania law, Plaintiffs have failed to provide the Court with any authority that justifies imposition of a duty, separate and apart from what is normally owed

8

under the law of defamation, in regard to the care with which Defendant gathered and verified the information that formed the basis of the defamatory MARI Report. Plaintiffs protest that as a universally accepted rule of law common to both Pennsylvania and New Jersey, the sale of information as a commercial product by any professional company or individual gives rise to a recognized duty of care. Pl. br. at 8. The Court does not accept this overly broad statement and in any event finds the cases Plaintiffs rely on for this proposition readily distinguishable from the matter at hand. Most notably, those cases deal with negligent misrepresentations made entirely outside of the context of defamatory publication. In Rempel v. Nationwide Life Insurance Co., for example, an insurance policy beneficiary who foreseeably relied on an insurance agent's misrepresentations regarding the extent of coverage under the policy properly brought a negligent misrepresentation claim when she sued the insurance agent. 370 A.2d 366, 367-68 (Pa. 1977). Similarly, in Rosenblum, Inc. v. Adler, a group of shareholders who foreseeably relied on a company's inaccurate financial statements properly brought a negligent misrepresentation claim when they sued the accountant who prepared the financial statements. 461 A.2d 138, 153 (N.J. 1983). And in Petrillo v. Bachenberg, where the attorney of a seller of real estate provided the seller with misleading reports regarding the quality of a parcel of land and the seller foreseeably provided these reports to a prospective buyer, the prospective buyer who foreseeably relied on the reports properly brought a negligence action against the lawyer. 655 A.2d 1354, 1359-60 (N.J. 1995).

    Rather than prove Plaintiffs' argument, those cases highlight an important distinction that drives the Court's decision. In all of those cases, a plaintiff relied to his or her own detriment on a misrepresentation furnished by the defendant for the plaintiff's guidance, and the basis for each plaintiff's negligence action was that a duty of care existed because the party who communicated

9

the misrepresentation could reasonably foresee that the plaintiff would rely upon the misrepresentation to his or her detriment. Petrillo, 655 A.2d at 1359-60; Rosenblum, 461 A.2d at 153; Rempel, 370 A.2d at 368. In the matter before the Court, however, even if Defendant could foresee the harm that a false report could cause Plaintiffs, Defendant did not furnish any information to Plaintiffs for their guidance, and Plaintiffs did not suffer injury because of their detrimental reliance on a misrepresentation. Instead, Plaintiffs injury occurred precisely because Defendant communicated a false statement to third parties, and these third parties relied on the report to the detriment of Plaintiffs' reputation. Thus, in this matter, the very basis for the negligence claims cited by Plaintiffs is nonexistent, while the basis for a defamation claim – that Plaintiffs suffered reputational injury because Defendant communicated the inaccurate MARI Report to third parties – is unavoidable. Accordingly, the Court will dismiss Plaintiffs' Complaint.[2]

### IV.  CONCLUSION

For the foregoing reasons, Defendant's motion for judgment on the pleadings is **GRANTED**. An accompanying order shall issue today.


Date:  8-3-2010                                            /s/ Robert B. Kugler
                                                           ROBERT B. KUGLER
                                                           United States District Judge

---

[2] Defendant also argues that if Pennsylvania law applies, Plaintiffs' claim should be dismissed because of Pennsylvania's economic loss doctrine. The economic loss doctrine provides that "no cause of action exists for negligence that results solely in economic damages unaccompanied by physical injury or property damage." Adams v. Copper Beach Townhome Communities, L.P., 816 A.2d 301, 305 (Pa. Super. 2003). Because of the Court's disposition, the Court need not address this argument.